**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION**

EDWARD HAROLD SAUNDERS, JR.,     )
                                        )

           **Plaintiff,**           )

v.                               )         **Civil Action No. 1:16-10159**

                                          )

B.J. JOHNSON, *et al.*,             )

                                          )

          **Defendants.**          )

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 59), filed on January 30, 2017. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 61.) Plaintiff filed his Response in Opposition on June 5, 2017. (Document Nos. 66 - 68.) Having thoroughly examined the record in this case, the undersigned respectfully recommends that the District Court grant the Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 59).

## PROCEDURAL BACKGROUND

On October 27, 2016, Plaintiff, acting *pro se*, filed his Application to Proceed Without Prepayment of Fees and a Complaint for alleged violations of his constitutional and civil rights pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). (Document Nos. 1 and 3.) In his Complaint, Plaintiff names the following as defendants: (1) B.J. Johnson, Warden; (2) Jane Doe Richer, Warden; (3) D. LeMaster, AWO; (4) T.J. Watson, AWP; (5) K. Martin, Acting Captain; (6) T. Lillard,

Captain; (7) J. Moore, SHU Lieutenant; (8) C. Diamond, SHU Lieutenant; (9) D. Kendrick, SOS SHU; (10) W. Kendrick, SOS SHU; (11) John Doe Kurt, SHU Property Officer; and (12) A. Thompson, SHU Property Officer. (Document No. 3, p. 4.) Plaintiff claims that Defendants violated his First Amendment rights by withholding his incoming newspapers, magazines, books, and family pictures, which were mailed through "approved channels." (Id., pp. 4 - 5.) Plaintiff further contends that Defendants violated his rights under the Fourteenth Amendment[1] by failing to notify him that his mail is being withheld. (Id.) As relief, Plaintiff requests monetary damages.[2] (Id., p. 5.)

On October 28, 2016, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed the Clerk to issue process upon Defendants. (Document No. 5.) On the same day, the Clerk issued process. (Document Nos. 6 and 7.) On November 7, 2016, the Summonses were returned unexecuted for Defendants B.J. Johnson, John Doe Kurt, and T.J. Watson. (Document No. 22 - 24.) Although the certified mail was addressed to Defendants Johnson, Kurt, and Watson at FCI McDowell, P.O. Box 1029, Welch, WV 24801, the mail was returned as undeliverable. (Id.) As to Defendants Johnson and Watson, the mail was returned undeliverable with the notation of "Refused, No Longer At This Address." (Document Nos. 22 and 24.) As to Defendant Kurt, the mail was returned undeliverable with the notation of "Refused, Unable to Identify Addressee." (Document No. 23.) By Order entered on November 8,

---

[1] Plaintiff incorrectly argues that his due process rights under the Fourteenth Amendment were violated. The undersigned notes that the Fourteenth Amendment applies to States. The undersigned, therefore, liberally construes Plaintiff's claim as a due process claim under the Fifth Amendment.

[2]  Because Plaintiff is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

2016, the undersigned directed Plaintiff to provide the Court with updated addresses for Defendants Johnson, Kurt, and Watson. (Document No. 25.)

On November 16, 2016, Plaintiff filed a Motion Requesting Leave to Amend Complaint. (Document No. 26.) In support, Plaintiff stated that an amendment was necessary for "the Plaintiff to describe how each defendant was involved, dates and places, and set forth each claim in a separate paragraph." (Id.) As an Exhibit, Plaintiff attached a copy of his "First Amended Complaint." (Document Nos. 26-2 and 29.) The undersigned noted that Plaintiff's "First Amended Complaint" corrected named defendant John Doe Kurt to John Doe Kirk. (Id.) By Order entered on November 17, 2016, the undersigned granted Plaintiff's Motion Requesting Leave to Amend Complaint. (Document No. 28.) The undersigned further directed the Clerk to amend the docket sheet to reflect John Doe Kirk, instead of John Doe Kurt, as a named defendant, and to serve a copy of Plaintiff's "First Amended Complaint." (Document No. 28.)

In his Amended Complaint, Plaintiff states that he was placed in the Special Housing Unit ["SHU"] on March 9, 2016. (Id., p. 21.) Plaintiff states that he submitted an Inmate Request to Defendant Moore on March 21, 2016, complaining that Plaintiff had not received his newspapers, magazines, books, and family pictures in the incoming mail since his placement in SHU. (Id.) On March 28, 2016, Plaintiff inquired of Defendants Moore as to why he had not responded to the Inmate Request regarding the foregoing. (Id.) Plaintiff acknowledges that Defendant Moore responded that inmates in SHU were not allowed to possess such items. (Id., p. 22.) Defendant Moore further explained that "when those items come in the incoming mail while an inmate is housed in Special Housing Unit, the items are placed in the inmate's personal property until the inmate is released from the Special Housing Unit." (Id.) When Plaintiff asked Defendant Moore to explain why SHU inmates could not have such items, Defendant Moore told

3

Plaintiff there was a memorandum signed by the Warden. (Id.) Plaintiff alleges that when he requested a copy from Defendant Moore, Defendant Moore "became very agitated and walked away from Plaintiff's cell." (Id.) Plaintiff alleges that Defendant Moore could not show him a copy because such did not exist. (Id.) Next, Plaintiff contends that he also inquired of Defendant Johnson concerning why SHU inmates could not possess the above items, and Defendant Johnson also stated it was BOP policy. (Id.) Plaintiff contends that Defendant Johnson also refused to provide Plaintiff with a copy of the policy. (Id.) Plaintiff alleges that all of the above named Defendants have improperly withheld Plaintiff's incoming newspapers, magazines, books, and pictures. (Id., p. 32.) Plaintiff contends that the policy restricting SHU inmates' "access to newspapers, magazines, books, and pictures sent through approved channels without giving notice of the withholding violates the First and Fourteenth Amendments." (Id., pp. 30 – 34.) Plaintiff contends there is no justification for the policy restriction access to the foregoing. (Id.) As relief, Plaintiff requests monetary damages. (Id., p. 34.)

On January 30, 2017, Defendants filed their "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 59 and 60.) Defendants contend that Plaintiff's Complaint should be dismissed based upon the following: (1) "The Defendants cannot be sued in their official capacities" (Document No. 60, p. 8.); (2) "Plaintiff cannot recover for emotional or psychological damages without a showing of physical injury" (Id., p. 9.); (3) "The Supreme Court has never established a *Bivens* implied damage remedy under the First Amendment" (Id., pp. 9 – 11.); (4) "Even if Plaintiff could bring a First Amendment claim under *Bivens*, his claim fails as the SHU restriction on personal property items is rationally related to a legitimate security interest" (Id., pp. 11 – 15.); (5) "There was no due process violation" (Id., pp. 15 – 16.); (6) "Correctional Officer D. Kendrick must be

4

dismissed" (Id., pp. 16 – 17.); (7) "Supervisory liability is inapplicable in a *Bivens* action" (Id., p. 17.); and (8) "The Defendants are entitled to qualified immunity" (Id., pp. 18 – 19.).

In support, Defendants filed the following Exhibits: (1) The Declaration of Sharon Wahl (Document No. 59-1, pp. 1 - 2.); (2) A copy of Plaintiff's "Public Information Inmate Data As Of 01-10-2017" (Id., pp. 4 – 6.); (3) A copy of a Pacer case search and relevant cases involving Plaintiff (Id., pp. 8 – 49.); (4) A copy of Plaintiff's "Inmate Discipline Data" as of January 10-2017 (Id., pp. 51- 54.); (4) A copy of relevant portions of Incident Report No. 2824811 (Id., pp. 56 – 57.); (5) A copy of Administrative Remedy ID No. 863371 (Id., pp. 59 – 61.); (6) The Declaration of James Moore (Id., pp. 62 – 63.); (7) A copy of the Special Housing Unit Rules List (Id., p. 65.); (8) A "Receipt and Acknowledgement of the Special Housing Unit Rules and Regulation" signed by Plaintiff on March 9, 2016 (Id., p. 67.); (9) The Declaration of Courtney Prater (Id., pp. 68 – 69.); (10) A copy of Plaintiff's "Inmate Personal Property Record" dated November 30, 2016 (Id., p. 71.); and (11) The Declaration of Debra Kendrick (Id., p. 72.).

On June 1, 2017, Plaintiff filed his Response in Opposition and Memorandum in Support. (Document Nos. 66 and 67.) As Exhibits, Plaintiff attaches the following: (1) A copy of Plaintiff's "Inmate Education Data Transcript" (Document No. 66-1, pp. 1 – 2.); (2) A copy of Warden B.J. Johnson's Response to Plaintiff's Request for Administrative Remedy dated June 14, 2016 (Remedy ID No. 863371-F1)(Id., p. 3.); (3) A copy of Regional Director J.F. Caraway's Response to Plaintiff's Administrative Remedy Appeal dated July 11, 2016 (Remedy ID No. 863371-R1) (Id., p. 4.); (4) A copy of Administrator Ian Connors' Response to Plaintiff's Central Office Administrative Remedy Appeal dated February 10, 2017 (Id., p. 5.); (6) A copy of the Declaration of Inmate Keenard Hattney (Id., p. 6.); (7) A copy of the Declaration of Inmate Carlos Robinson (Id., p. 7.); (8) A copy of the Declaration of Inmate Jay Nagel (Id., p. 8.); (9) A

copy of the Declaration of Inmate Maurice Pittman (Id., p. 9.); (10) A copy of the Declaration of

Inmate Jose Contreras (Id., pp. 10 - 11.); (11) A copy of the Declaration of Inmate Auner G.

Mazaricgos (Id., p. 12.); (12) A copy of the Declaration Lynette Harris and Exhibits (Id., pp. 13

– 17.); (13) A copy of the Declaration of Angela Taylor and Exhibits (Id., pp. 18 – 19, Document

No. 66-2, Document No. 66-3, Document No. 66-4, and Document No. 66-5.); (14) A copy of

the Declaration of Chantay McCoy and Exhibits (Document Nos. 66-6 and 66-7.); (15) A copy

of the Declaration of Dinah Arlene Thomas (Document No 66-8, p. 1.); (16) A copy of a letter to

Plaintiff from Congressman Evan Jenkins (Id., pp. 2 – 3.); (17) A copy of a letter to

Congressman Jenkins from the BOP regarding Plaintiff (Id., p. 4.); (18) A copy of the magazine

covers from the following: Fortune; Money; Entrepreneur; and Essence (Id., pp. 5 – 8.); (19) A

copy of a letter from this Court to Plaintiff dated May 24, 2016 (Id., p. 10.); (20) A copy of the

"Certified Mail Receipt" (Id., p. 11.); (21) A copy of USPS Tracking (Id., p. 12.); (22) A copy of

UPS tracking details (Id., pp. 13 – 18.); (23) A copy of "Clearance Data" (Id., p. 19.); and (24) A

copy of Plaintiff's Declaration, the "Special Housing Rules," and "Special Housing Unit Cell

and Sanitation Standards" (Document No. 68.).

## FACTUAL HISTORY

Plaintiff was incarcerated at FCI McDowell from February 17, 2016, until December 1,

2016, when he was transferred to FCI Forrest City, Arkansas. (Document No. 69-2, p. 2.) While

in general population on March 9, 2016, Plaintiff was instructed by a Correctional Officer to

change cells for routine cell rotations. Plaintiff, however, refused to change cells as instructed.

Plaintiff was given an Incident Report based upon his refusal and placed in administrative

detention in SHU. Upon Plaintiff's placement in SHU, Plaintiff was provided with a copy of the

SHU Rules and Regulations. Plaintiff signed a Receipt and Acknowledgement Form on March 9,

2016 concerning receipt of the SHU Rules and Regulations. These rules and regulations included the list of personal property items that inmates could possess in their SHU cell at FCI McDowell. After Plaintiff's placement in SHU, Plaintiff continued to refuse to leave SHU and complete programming in the general population. Plaintiff received additional incident reports on March 23, 2016 and May 3, 2016, based upon his refusal to return to general population. Plaintiff was transferred from FCI McDowell on December 1, 2016. Upon Plaintiff's transfer, the following items were noted in Plaintiff's possession in SHU: 20 personal photographs, some legal materials, and two books.

The SHU Regulation in dispute provides as follows:

Personal property will normally be issued within seven (7) working days after entry into the Special Housing Unit, or when an AD/DS status change occurs while a SHU resident. Property will be inventoried, boxed, and sealed until an inmate's release from SHU. All inmate personal property retained in their possession will be stored in the storage rack attached under the lower bed.

Inmates placed in the Special Housing Unit will not be allowed to retrieve items from their personal property after initial inventory is conducted by the segregation property officer. The only exceptions to this will be the following:

1.    Inmates will be able to retrieve legal material that is related to current and on-going case(s). This must be verified and approved by the inmate's Unit Team.

2.    Inmates that have no funds in their commissary account will be able to receive hygiene items from staff. Inmates that have funds available will have to purchase new hygiene items from the commissary. The unit team must verify that the inmate is indigent.

**AUTHORIZED ITEMS:    (ADMINSITATIVE DETENTION)**
(1)    Bible or Koran, or other Authorized Scripture, paperback (1 only)
(2)    2 paperback books (book cart only)
(3)    Eye glasses (1 pair)
(4)    Legal materials (current case only, minimal amount that will not create a fire or security hazard) – Authorized by Unit Team
(5)    Personal hygiene items (purchased through commissary while in SHU)
(6)    Unaltered radio w/ear buds only
(7)    Authorized religious headgear

7

    (8)      Mail (received in SHU only) – 10 pieces
    (9)      Snack food (commissary purchased while in SHU only)
    (10)    Stamps (1 book) and stationary
    (11)    Wedding band
    (12)    Medicine (provided by health services, not expired and labeled)
    (13)    Over the counter medicine (purchased in SHU only)
    (14)    Address book (1 only)

Various religious items, i.e., prayer shawl, prayer beads, and tefilin will be approved by the SHU Lieutenant and the Chaplin on an individual basis.

(Document No. 59-1, p. 65.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

Federal Courts are Courts of limited jurisdiction that are empowered to consider cases authorized by Article III of the United States Constitution and statutes enacted by Congress. Bender v. Williamsport Area School District, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). A motion to dismiss filed pursuant to Rule 12(b)(1) raises the question of the federal court's subject matter jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Once subject matter jurisdiction is challenged, plaintiff bears the "burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). Subject matter jurisdiction cannot be waived by the Court or the parties. The absence of subject-matter jurisdiction may be raised at any time. Lovern v. Edwards, 190 F.3d 648 (4th Cir. 1999). When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a District Court may refer to evidence outside the pleadings without converting the proceeding to one for summary judgment. See William v. United States, 50 F.3d 299 (4th Cir. 1995).

**Summary Judgment**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing

sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

**1.    Defendants Cannot be Sued in their Official Capacities:**

In their Motion, Defendants argue that they cannot be sued in their official capacities. (Document No. 59 and Document No. 60, p. 8.) Therefore, Defendants states that "[t]o the extent they are named in their official capacities for money damages, the Defendants must be dismissed, as an action against 'federal officers in their official capacities is essentially a suit against the United States, [and] such suits are [] barred under the doctrine of sovereign immunity . . ..'" (Document No. 60, p. 8.)

In Response, Plaintiff asserts that "the Defendants can be sued in their individual capacities." (Document No. 67, pp. 12 – 14.) Plaintiff argues that he was "not required to designate with specific words in the pleadings that [he was] bringing a claim against defendants in their individual or official capacities, or both." (Id., p. 13.) Plaintiff states that "while it is 'clearly preferable' that a plaintiff state explicitly in what capacity defendants are being used, 'failure to do so is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice.'" (Id.) Plaintiff argues that "[n]owhere in the amended complaint did Plaintiff specifically name any defendant in their official capacity for money damages and the

failure to do so was not fatal."[3] (Id., pp. 13 – 14.) Plaintiff, therefore, concludes that "the defense that suits are barred under the doctrine of sovereign immunity must fail." (Id., p. 14.)

An inmate may name a federal officer in an individual capacity as a defendant in alleging a constitutional violation pursuant to Bivens. See Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, Bivens claims for money damages are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Doe v. Chao, 306 F.3d 170, 184 (4th Cir. 2002)("[A] Bivens action does not lie against either agencies or officials in their official capacities."); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reinbold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999). Such claims are barred by operation of the doctrine of sovereign immunity. McClosky v. Mueller, 446 F.3d 262, 271 - 272 (1st Cir. 2006)("The Bivens doctrine . . . does not override bedrock principles of sovereign immunity so as to permit suits against the United States, its agencies, or federal officers sued in their official capacities.") A plaintiff, however, may seek injunctive relief against a federal officer in his or her official capacity. Everett v. Francis, 2009 WL 2971359, * 4 (N.D.W.Va. Sep. 16, 2009)("[T]he Bivens requirement that suits do not lie against federal officers in their official capacity contemplates claims for monetary relief, not injunctive relief."); also see Kirby v. City of Elizabeth City, N.C., 388 F.3d 440, 452 n. 10 (4th Cir. 2004)(stating that injunctive relief sought by the plaintiff could only be awarded against the officers in their official capacities); Community Mental Health Services of Belmont v. Mental Health & Recovery Bd., 150 F.Appx. 389, 401 (6th Cir. 2005)("[A] plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the officials' job,

_____

[3]  A review of Plaintiff's Amended Complaint clearly reveals that Plaintiff is suing defendants in

11

i.e., his official capacity."); <u>Singletary v. Fallen</u>, 2012 WL 368375 (D.S.C. Jan. 17, 2012)(finding that sovereign immunity does not protect federal officials from suit naming them in their official capacities when injunctive relief rather than damages is sought.).

Based upon the foregoing, the undersigned finds that Plaintiff's <u>Bivens</u> action seeking monetary damages against Defendants in their official capacities should be dismissed. As stated above, <u>Bivens</u> claims seeking monetary damages is not actionable against defendants acting in their official capacities. Although a plaintiff may sue a federal officer in his or her official capacity for injunctive relief, Plaintiff only requests monetary damages as relief in the instant case. (Document No. 29, p. 34.) Accordingly, the Court respectfully recommends that Plaintiff's claim for monetary damages against Defendants in their official capacity be dismissed.

**2.      Defendant D. Kendrick:**

In her Motion, Defendant Kendrick argues that she must be dismissed from the above action because she is an incorrectly named defendant. (Document No. 59 and Document No. 60, pp. 16 – 17.) Defendant Kendrick explains that she started working as a new Correctional Officer at FCI McDowell in November, 2015. (<u>Id</u>.) She declares that all newly hired officers must work at least one year prior to working an assignment in SHU. (<u>Id</u>.) Defendant Kendrick claims that Plaintiff was transferred from FCI McDowell in November 2016, and "Defendant D. Kendrick did not work in SHU at any time before Plaintiff left FCI McDowell." (<u>Id</u>.) Defendant Kendrick explains that she was inappropriately named as a defendant, which "is evident by the impossibility of her working in SHU and because Plaintiff's Amended Complaint refers to D. Kendrick as a male." (<u>Id</u>.) Plaintiff fails to address the foregoing argument in his Responses. (Document No. 66 – 68.)

their "individual and official capacity." (Document No. 29.)

The undersigned notes that all allegations against D. Kendrick involve events occurring within the SHU. Defendant Debra Kendrick declares as follows:

3.      I understand that Plaintiff has named me in a lawsuit involving his claim that he was unable to get certain property while he was housed in the Special Housing Unit ("SHU") at FCI McDowell.

4.      I did not work in SHU during any of the time Plaintiff was housed at FCI McDowell. In fact, I was not hired until November of 2015, and new hires are not permitted to work in SHU until they complete one year of employment. It appears Plaintiff has my named confused with someone else.

(Document No. 59-1, p. 72.) Further, it is clear that Plaintiff refers to D. Kendrick as a male in his Complaint and Defendant Debra Kendrick is a female. (Id.) Plaintiff does not dispute the foregoing. Thus, the undersigned respectfully recommends that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" should be granted as to Defendant Debra Kendrick.

**3.      Emotional or Psychological Damages:**

In their Motion, Defendants argue that Plaintiff's claim for emotional or psychological damages should be dismissed. (Document No. 59 and Document No. 60, p. 9.) Defendants argue that "[u]nder the PLRA, no inmate may bring any civil action against the United States or an employee of the Government for mental or emotional injury suffered while in custody without a prior showing of physical injury." (Document No. 60, p. 9.) Defendants claim that "Plaintiff does not allege any physical injury in this action." (Id.) Defendants, therefore, argue that Plaintiff's Complaint should be dismissed. (Id.)

In Response, Plaintiff argues that he "incurred a physical injury." (Document No. 67, p. 14.) Plaintiff contends that "an injury is defined as a 'violation of another's rights for which the law allows an action to recover damages.'" (Id.) Plaintiff explains that he alleges that

13

Defendants' conduct violated his rights under the First and Fifth Amendments. (Id.) Plaintiff argues that "improperly restricting receipt of publications and pictures that are mailed through approved channels is an injury." (Id.)

The Prison Litigation Reform Act [PLRA] expressly prohibits the filing of civil actions by prisoners "confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Although the PLRA does not define "physical injury" and the Fourth Circuit has not provided a definition, other courts have held that the "physical injury" need not be significant, but it must be more than de minimis. See Flanory v. Bonn, 604 F.3d 249, 254 (6th Cir. 2010); Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312-13 (11th Cir. 2002); Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997); Zehner v. Trigg, 952 F.Supp. 1318 (S.D. Ind. 1997). In addition, "[a] plaintiff seeking compensatory damages for emotional distress cannot rely on conclusory statements that the plaintiff suffered emotional distress [or] the mere fact that a constitutional violation occurred, but, rather, the testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated." Knussman v. Maryland, 272 F.3d 625, 640 (4th Cir. 2001), quoting Price v. City of Charlotte, 93 F.3d 1241, 1254 (4th Cir. 1996)(internal quotation marks omitted).

In his Amended Complaint, Plaintiff requests monetary damages for the alleged violation of his constitutional rights. (Document No. 29, p. 34.) Plaintiff, however, fails to allege any facts supporting the existence of a physical injury as the result of Defendants' conduct. Plaintiff's conclusory allegation that he is entitled to damages is inadequate. To the extent Plaintiff is requesting money damages for emotional or psychological damages, the Court finds that Defendants' Motion to Dismiss, or in the Alternative Motion for Summary Judgment should be

granted.

**4.     Claim for Monetary Damages under <u>Bivens</u> regarding First Amendment violation.**

In their Motion, Defendants argue that "Plaintiff's First Amendment claim for money damages is not cognizable under <u>Bivens</u> and should be dismissed." (Document No. 59 and Document No. 60, pp. 9 - 11.) Specifically, Defendants state that "the Supreme Court has repeatedly pointed out its reluctance to extend <u>Bivens</u> claims generally and has specifically stated that it never extended <u>Bivens</u> claims to include First Amendment claims." (<u>Id.</u>, p. 11.) Defendants, therefore, contend that "Plaintiff's First Amendment claim for money damages should be dismissed." (<u>Id.</u>)

In Response, Plaintiff argues that "[a] <u>Bivens</u> action is a judicially created damages remedy which is designed to vindicate violations of the constitutional rights by federal actors." (Document No. 67, p. 15.) Plaintiff contends that "a plaintiff asserting a claim under <u>Bivens</u> must show a violation of a valid constitutional right by a person acting under color of federal law." (<u>Id.</u>) Thus, Plaintiff concludes that he has appropriately alleged a violation of his First Amendment rights by Defendants that were acting under color of federal law. (<u>Id.</u>)

A <u>Bivens</u> action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See <u>Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. 388, 395-97, 91 S.Ct. 1999, 2004-05, 29 L.Ed.2d 619 (1971); <u>also see</u> <u>Carlson v. Green</u>, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending <u>Bivens</u> to Eighth Amendment claims); <u>Davis v. Passman</u>, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending <u>Bivens</u> to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.).The United States Supreme Court expressly recognized that <u>Bivens</u> remedies were

restricted to claims arising under the Fourth, Fifth, and Eighth Amendments to the United States Constitution. Correctional Services Corporation v. Malesko, 534 U.S. 61, 67-68, 22 S.Ct. 515, 519-20, 151 L.Ed.2d 456 (2001). The Supreme Court has further explained that a Bivens remedy does not lie where (1) Congress provided an equally effective alternative remedy and declared it to be a substitute for recovery under the Constitution, and (2) where defendants demonstrate "special factors counseling hesitation in the absence of affirmative action by Congress." Carlson, 446 U.S. at 18-19, 100 S.Ct. at 1471; Holly v. Scott, 434 F.3d 287, 290 (4th Cir. 2006)(stating that the "Court has therefore on multiple occasions declined to extend *Bivens* because Congress is in a better position to decide whether or not the public interest would be served by the creation of new substantive legal liability.") The Fourth Circuit has recognized that "the Supreme Court has long counseled restraint in implying new remedies at law" and "[s]uch restrain counsels that we review a plaintiff's invitation to imply a *Bivens* action . . . with skepticism." Cioca v. Rumsfeld, 720 F.3d 505, 509 (4th Cir. 2013)(quoting Lebron v. Rumsfeld, 670 F.3d 540, 548 (4th Cir. 2012).

In Ashcroft v. Iqbal, the Supreme Court stated that "we have declined to extend Bivens to a  claim sounding in the First Amendment." Iqbal, 556 U.S. at 676, 129 S.Ct. at 1948, citing Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983)("we have not found an implied damages remedy under the Free Exercise Clause"); also see Reichle v. Howards, ___ U.S. ___, 132 S.Ct. 2088, n. 4, 182 L.Ed.2d 985 (2012)("We have never held that Bivens extends to First Amendment claims."); Malesko, 534 U.S. at 67-68, 122 S.Ct. at 519-20 (noting that "we declined to create a *Bivens* remedy against individual Government officials for a First Amendment violation arising in the context of federal employment"). A Bivens damages claim sounding in the First Amendment arguably has not been recognized by the Supreme Court

16

because prisoners may pursue such claims under the FTCA or seek injunctive relief based on the federal courts' equity jurisdiction to prevent the violation of constitutional rights. See Wilkie v. Robbins, 551 U.S. 537, 550, 125 S.Ct. 2588, 2598, 168 L.Ed.2d. 389 (2007); Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 *1946)(recognizing the "jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution"); also see 42 U.S.C. § 1997e(e)(prisoners are not entitled to money damages where no physical injury is shown). Based upon the foregoing, the undersigned finds that there is no damage remedy under Bivens for alleged violations of the First Amendment. See Turkmen v. Hasty, 789 F.3d 218, 236 (2nd Cir. 2015)(Damages remedy under Bivens was not available to detainees in federal custody based upon their claim that officers interfered with their prayer and access to copies of the Quran in violation of their rights under the Free Exercise Clause); Clinton v. Brown, 2015 WL 4941799 (W.D.N.C. Aug. 19, 2015)(finding that Plaintiff's allegation of a violation of his First Amendment right was an unrecognized claim under Bivens); Heap v. Carter, 2015 WL 3999077 (E.D.Va. July 1, 2015)(no implied cause of action for damages under Bivens for alleged violations of the First Amendment); Blackman v. Torres, 2013 WL 941830, * 2 (D.Colo. March, 11, 2013)(dismissing the damages aspect of plaintiff's First Amendment claim); DeBrew v. Brooks, 2011 WL 9933745, * 3 (E.D.N.C. July 22, 2011)(Plaintiff is not entitled to monetary relief on his First Amendment claim), aff'd, 475 Fed. Apex. 479 (4th Cir. 2012). Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment be granted as Plaintiff's Bivens claim for monetary damages concerning the alleged violation of his First Amendment rights. Notwithstanding the foregoing, the undersigned will briefly consider Plaintiff's First Amendment claim.

5.    **First Amendment:**

In their Motion, Defendants argue that "[e]ven if Plaintiff could bring a First Amendment Claim under <u>Bivens</u>, his claim fails as the SHU restriction on personal property items is rationally related to a legitimate security interest." (Document No. 59 and Document No. 60, pp. 11 – 15.) Defendants contends that "FCI McDowell's SHU property restrictions are reasonably related to a legitimate penological interest, including the security, fire, safety, sanitation and orderly running of the institution, and therefore do no violation the First Amendment." (<u>Id.</u>, p. 13.)

In Response, Plaintiff merely argues that Defendants have failed to "provide a rational connection between the prison policy and the legitimate governmental interest put forth to justify it." (Document No. 66, p. 2.) Plaintiff further appears to argue that Defendants cannot assert the defense that the "SHU restriction of personal property items was rational related legitimate security interest" because Defendants failed to exhaust their administrative remedies on this defense. (<u>Id.</u>, pp. 16 – 18.)

Prison inmates have a First Amendment right to send and receive mail. <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 407-08, 109 S.Ct. 1874, 1878-79, 104 L.Ed.2d 459 (1989). Publishers have a right under the First Amendment to communicate with inmates and inmates have a corresponding legitimate First Amendment interest in communicating with the publishers by subscription. <u>Id.</u> Limitations or restrictions upon inmates' constitutional rights, however, are permissible if they are "reasonably related to legitimate penological interests." <u>Shaw v. Murphy</u>, 532 U.S. 223, 229, 121 S.Ct. 1475, 1479, 149 L.Ed.2d 420 (2001)(quoting <u>Pell v. Procunier</u>, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); <u>Turner</u>, <u>supra</u>, 482 U.S. at 89, 107 S.Ct. at 2261; Thornburgh, supra, 490 U.S. at 407, 109 S.Ct. at 1878-79; <u>Lovelace v. Lee</u>, 472 F.3d 174,

199 (4th Cir. 2006). It is plaintiff's burden to establish that the regulation at issue is unconstitutional. See Hause v. Vaught, 993 F.2d 1079, 1082 (4th Cir. 1993), cert denied, 510 U.S. 1049, 114 S.Ct. 702, 126 L.Ed.2d 668 (1994). To determine the reasonableness of a regulation, the Court should consider the follow factors: (1) whether there is a valid, rational connection between the regulation and the legitimate governmental interest; (2) whether the inmate has an alternative means of exercising the right in question; (3) what impact the requested accommodation would have on prison officials, staff, other inmates, and prison resources; and (4) whether easy and obvious alternatives exist that indicate that the regulation is an exaggerated response by prison officials. Turner, supra, 482 U.S. at 89-92, 107 S.Ct. at 2261-63.

Considering the first Turner factor, the undersigned finds there is a valid, rational connection between the regulation and a legitimate governmental interest. Due to the limited cell space in SHU, Defendants contend that limitations on the possession of personal property is necessary for fire safety, security, and sanitation issues. In his Declaration Lieutenant James Moore explains that "[p]ersonal property items on Administrative Detention inmates in SHU are in place, in part, because of the fire risks that exist with excess paper and property, sanitation issues that are implicated because of storing these items in bulk, and security issues related to covering cell windows and creating hiding places for and/or fabrication of contraband from these items." (Document No. 59-1, p. 63.) Plaintiff has failed to offer any arguments or evidence indicating that the regulation is not related to a legitimate governmental interest. To the extent Plaintiff argues that Defendants cannot assert such a defense because Defendants failed to exhaust their administrative remedies, the undersigned finds that such a claim is without merit. Defendants are not required to exhaust administrative remedies concerning defenses to lawsuits. The undersigned agrees that security, fire safety, and sanitation issues are legitimate

19

governmental interest that are rationally related to limiting the personal property of inmates temporarily housed in SHU. See United States v. Stotts, 925 F.2d 83, 87-88 (4th Cir. 1991)(finding it appropriate for prison administration to develop regulations restricting inmates' receipt of mail in anticipation of prospective security concerns and administrative concerns); Dixon v. Kirby, 210 F.Supp.2d 792, 800 (S.D.W.Va.)(finding there was a clear, rational connection between the regulation prohibiting inmates' receipt of catalogs and the prison's legitimate and neutral administrative interest).

Considering the second Turner factor, the undersigned finds that Plaintiff had an alternative means of exercising the right in question. The record reveals that Plaintiff had the option of returning to general population, where the regulation limiting the personal property of SHU inmates would not have applied to Plaintiff. Plaintiff, however, refused to return to general population.

Considering the third Turner factor, the undersigned finds that allowing Plaintiff or other SHU inmates to have unlimited personal property would place an undue burden on the institution because there is inadequate room to safely store the additional property in the smaller SHU cell. (Document No. 59-1, pp. 62 – 63.) "When accommodation of an asserted right will have a significant affect on . . . prison staff, courts should defer to the informed discretion of corrections officials." Dixon, supra, 210 F.Supp. at 801(citations omitted). Defendants contend that if each SHU inmate was allowed to have all desired items in their SHU cell, it would create security, fire safety, and sanitation concerns. Aside from Plaintiff's meritless argument that Defendants failed to exhaust administrative remedies concerning the above defense, Plaintiff fails to offer any arguments or evidence disputing the foregoing.

Considering the final Turner factor, the undersigned finds no easy or obvious alternatives

which would allow SHU inmates to possess all personal property as is allowed in general population. Defendants acknowledge the building larger cells would be an alternative, but such would be unreasonable and create a great expense to the prison. In view of the potentially enormous cost of building larger SHU cells, the SHU regulation restricting personal property cannot be viewed as an exaggerated response to the legitimate security and administrative concerns.

Accordingly, the undersigned respectfully recommends that the District Court grant Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" as to Plaintiff's First Amendment claim.[4]

### 6.    No Due Process Violation:

In their Motion, Defendants argue that "there was no due process violation." (Document No. 59 and Document No. 60, pp. 15 – 16.) First, Defendants argue that there was no constitutional deprivation. (Id.) Second, Defendants argue that Plaintiff was provided with notice that personal property would be limited upon his arrival at SHU and Plaintiff had post-deprivation remedy through the administrative remedy procedures. (Id.) Defendants contend that "[t]he fact that Plaintiff does not like the outcome of that grievance process does not render it defective." (Id.) In Response, Plaintiff generally argues that "Defendants violated his due process rights by failing to provide notice regarding the withholding of his mail." (Document No. 67.)

Although the Fifth Amendment of the United States Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law,"

---

[4] The undersigned notes that Plaintiff has failed to request any injunctive relief. Even assuming Plaintiff is requesting that Defendants stop applying the SHU policy, Plaintiff is no longer an inmate at FCI McDowell.

the range of protected liberty interests for defendants convicted and confined in prison are significantly reduced for their period of incarceration. <u>See</u> U.S. Const. Amend. XIV, § 1; <u>Gaston v. Taylor</u>, 946 F.2d 340, 343 (4th Cir. 1991). The fact of conviction implies the defendant's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. <u>Gaston</u>, 946 F.2d at 343. Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." <u>Gaston v. Taylor</u>, 946 F.2d at 343 (emphasis added).

To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. <u>See Board of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. <u>See Greenholtz v. Inmates of Neb. Penal and Corr. Complex</u>, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103-04, 60 L.Ed.2d 668 (1979)(quoting <u>Board of Regents v. Roth</u>, 408 U.S. at 577, 92 S.Ct. 2709). In <u>Gaston v. Taylor</u>, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away, expressly or by implication, in the original sentence to confinement." <u>Id.</u> at 343. Such interests, however,

> will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

<u>Sandin v. Conner</u>, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995)(citations omitted). Consequently, in order to establish that a deprivation of his due process rights has occurred, Petitioner must first identify a liberty interest which is protected by the Due Process Clause of the United States Constitution. <u>See Wolff v. McDonnell</u>, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)(holding that an inmate cannot be deprived of a protected liberty interest

in good-time credits without procedural due process). Second, the inmate must establish that the denial of the liberty interest "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Martin v. Duff, 2017 WL 2366997, * 9 (4th Cir. June 1, 2017)(citing Sandin, 515 U.S. at 484, 115 S.Ct. at 2300). "An inmate who fails to satisfy these two requirements '*cannot* invoke the procedural protections of the Due Process Clause.'" Id. (citing Meachum v. Fano, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976))(emphasis in original).

To the extent Plaintiff alleges a liberty interest in possession unlimited amounts of personal property while placed in SHU, the undersigned finds that Plaintiff's claim is without merit. The denial of privileges are matters clearly contemplated by Plaintiff's original sentence. See Gaston, 946 F.2d at 343 (To safely and efficiently run the prison, prison officials maintain broad discretion over an inmate's "location, variations of daily routines, changes in conditions of confinement (including administrative segregation), and the denial of privileges"); Hatch v. District of Columbia, 184 F.3d. 846, 855 (D.C. Cir. 1999)(stating that "the transfer of an inmate to less amenable and more restrictive quarter for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"); and Gholson v. Murry, 953 F. Supp. 709, 716 (E.D.Va. 1997)(finding that the denial of work opportunities and certain education programs did not impose an atypical and significant hardship on inmates placed in segregation in relation to the ordinary incidents of prison life). Even assuming Plaintiff possessed such a liberty interest, there is no indication or allegation that the restriction upon Plaintiff's possession of personal property created an atypical and significant deprivation. See Kennedy v. Blankenship, 100 F.3d 640, 642 n. 2 (8th Cir. 1996)(holding that placement in segregation did not create an atypical and significant deprivation even though the inmate face

restrictions in mail, telephone, visitation, commissary, and personal possession privileges); <u>also</u>

<u>Freitas v. Ault</u>, 109 F.3d 1335, 1337-38 (8th Cir. 1997)(finding that an involuntary transfer to a

higher-security facility and loss of work and phone privileges did not constitute atypical and

significant hardship); <u>Principio v. McGinnis</u>, 2007 WL 2344872, * 2 (W.D.N.Y. Aug. 15,

2007)(finding that "60 days of keeplock with loss of telephone, packages, recreation and

conjugal visits," was not an atypical or significant hardship); <u>Richardson v. Johnson</u>, 2001 WL

360843, * 1 n. 1 (N.D.Tex. April 5, 2001)(finding that phone-privilege restrictions, like

commissary and recreation restrictions, do not impose a significant or atypical hardship on the

inmate in relation to the ordinary incidents of prison life); <u>James v. Odom</u>, 2000 WL 1136563 *5

(S.D.Ala. May 30, 2000)(finding a 45-day restriction on inmate's "store, phone, and visiting

privileges" did not constituted an atypical or significant hardship). Since Plaintiff has failed to

establish both the existence of a liberty interest and that the denial of such an interest imposes

atypical and significant hardship, Plaintiff cannot invoke the procedural protections of the Due

Process Clause.[5] Accordingly, undersigned respectfully recommends that Defendants' Motion to

Dismiss, or in the Alternative, Motion for Summary Judgment be granted. The undersigned finds

it unnecessary to consider the other reasons which the Defendants have submitted for dismissal.

## **PROPOSAL AND RECOMMENDATION**

　　　　Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court

confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED**

---

[5] The undersigned further notes that upon Plaintiff's arrival in SHU, Plaintiff was provided with notice of the restrictions on possession of personal property. The record clearly reveals that Plaintiff signed a form acknowledges "Receipt and Acknowledgment of the Special Housing Unit Rules and Regulations." (Document No. 59-1, p. 67.) Furthermore, Plaintiff had post-deprivation remedies through the administrative remedy process. Although Plaintiff appears to be unhappy with the results of the administrative remedy process, the record clearly reveals that he had access to and utilized the procedure. (<u>Id.</u>, pp. 59 – 61.)

that the District Court **GRANT** Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 59), **DISMISS** Plaintiff's Complaint (Document Nos. 3 and 29) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: July 24, 2017.

Omar J. Aboulhosn
United States Magistrate Judge